[Cite as *State ex rel. Ohio Inst. For Fair Contracting, Inc. v. Porter*, 2014-Ohio-2194.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.       :
Ohio Institute For Fair Contracting, Inc.,

              :

    Relator,

              :

v.                No. 13AP-776

              :

Andre T. Porter, Director of the Ohio    (REGULAR CALENDAR)
Department of Commerce,     :

    Respondent.       :

---

D E C I S I O N

Rendered on May 22, 2014

---

*D' Angelo & Hughes Co., L.P.A.,* and *Joseph M. D' Angelo,* for relator.

*Michael DeWine,* Attorney General, and *Aaron W. Johnston,* for respondent.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

O'GRADY, J.

{¶ 1} In this original action, relator, the Ohio Institute For Fair Contracting, Inc., requests a writ of mandamus ordering respondent, Andre T. Porter, Director of the Ohio Department of Commerce, to investigate, pursuant to R.C. 4115.13, the alleged violations of the prevailing wage law as set forth by relator in a parcel of documents mailed to the director's predecessor on or about October 2, 2012.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, appended hereto, including findings of fact and conclusions of law. The magistrate concluded relator could

not show a clear legal right to have respondent investigate its allegations or that respondent had a clear legal duty to investigate its allegations. Accordingly, the magistrate recommended this court grant respondent's motion to dismiss and deny relator's motion for judgment on the pleadings.

{¶ 3} Relator presents the following objections to the magistrate's conclusions of law:

> 1. The Magistrate's [sic] erred in his conclusion of law that there is no mandatory directive for Director of Commerce investigation in R.C. 4115 *et seq.* when he
>
> a. neglected to analyze R.C. 4115.10(E); and
>
> b. found the that the [sic] language of "shall investigate" in R.C. 4115 *et seq.* is contingent upon only two instances: the Director's discretion or an employee/interested party complaint;
>
> 2. The Magistrate's [sic] erred in his conclusion of law as to the specific basis of OIFC's standing to petition for a Writ of Mandamus.

{¶ 4} To be entitled to a writ of mandamus, relator must demonstrate a clear legal right to the requested relief, a corresponding clear legal duty on the part of the respondent to provide the requested relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Ervin v. Barker*, 136 Ohio St.3d 160, 2013-Ohio-3171, ¶ 9.

{¶ 5} In its first objection, relator contends the magistrate erred in his interpretation of R.C. 4115.13(A), which provides:

> (A) *Upon the director's own motion* or within five days of the filing of a properly completed complaint under section 4115.10 or 4115.16 of the Revised Code, *the director of commerce*, or a representative designated by the director, *shall investigate any alleged violation of sections 4115.03 to 4115.16 of the Revised Code.*

(Emphasis added.) Under R.C. 4115.10(B), employees on public improvements who are paid less than the prevailing rate of wages applicable thereto may file a complaint which must include documented evidence to demonstrate the employee was underpaid in violation of R.C. Chapter 4115. Under R.C. 4115.16(A), an "interested party" may file a complaint alleging a specific violation of R.C. 4115.03 to 4115.16 by a specific contractor or

subcontractor. Such a complaint must include sufficient evidence to justify the complaint. R.C. 4115.03(F) defines who an interested party is.

{¶ 6} The magistrate interpreted R.C. 4115.13(A) to mean the director only had a duty to commence an investigation if an employee or interested party properly filed a complaint or if the director, in his discretion, decided to initiate an investigation on his own motion. Relator is not an employee or interested party that properly filed a complaint under R.C. 4115.10 or 4115.16. However, relator contends the director *must* initiate an investigation on his "own motion" in certain circumstances. Specifically, relator complains the magistrate ignored R.C. 4115.10(E), which provides: "The director shall enforce sections 4115.03 to 4115.16 of the Revised Code." Relator contends based on this provision, when someone other than an employee or interested party presents the director with documented evidence of a violation of R.C. 4115.03 to 4115.16, the director must enforce those laws by initiating an investigation on his own motion under R.C. 4115.13(A). Relator claims it provided the director with such evidence.

{¶ 7} However, as the magistrate stated:

> In determining legislative intent, this court must first look to the plain language of R.C. 4115.13(A). *See State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997). If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. *Id.* Unambiguous statutes are to be applied according to the plain meaning of the words used. *Id.* Courts are not free to delete or insert other words. *Id.*

(Attached Magistrate's Decision, at ¶ 45.)

{¶ 8} The magistrate correctly observed R.C. 4115.13(A) unambiguously gives the director power to launch an investigation upon the director's "own motion." This language implies the director has discretion to decide when to make a motion. Once the director chooses to make a motion, then the director "shall investigate" the alleged violations. If the legislature intended to give the director no discretion in investigating allegations supported by evidence, regardless of the source, there would be no reason for the legislature to distinguish between investigations triggered by the director's "own motion" and those triggered by complaints of employees and interested parties under R.C. 4115.10 and 4115.16.

{¶ 9}   Relator is correct that the magistrate did not specifically address the relationship between R.C. 4115.10(E) and R.C. 4115.13(A). However, such an analysis was unnecessary because R.C. 4115.13(A) is unambiguous, and R.C. 4115.10(E) does not alter it as relator suggests. The director's obligation to enforce the prevailing wage laws, which include R.C. 4115.13(A), does not somehow remove from his discretion the decision of when to make his "own motion" under R.C. 4115.13(A). Therefore, we overrule relator's first objection.

{¶ 10} In its second objection, relator contends the magistrate found it had standing to bring this mandamus action but erred in failing to state the basis for standing, i.e., whether relator had beneficial interest standing, injury in fact standing, or both. Relator misreads the magistrate's decision.  After summarizing the parties' respective arguments about standing, the magistrate found it unnecessary to determine whether relator, in fact, had standing.  As the magistrate explained, even if relator had standing, relator was not entitled to a writ of mandamus because it could not demonstrate a clear legal right to the requested relief or a corresponding clear legal duty on the part of the respondent to provide the requested relief. The magistrate was correct there was no reason to address the issue of standing under these circumstances. Therefore, we overrule relator's second objection.

{¶ 11} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law. We deny relator's motion for judgment on the pleadings, grant respondent's motion to dismiss, and dismiss relator's complaint for a writ of mandamus.

*Objections overruled;*
*motion for judgment on the pleadings denied;*
*motion to dismiss granted; complaint dismissed.*

TYACK and DORRIAN, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.                              :
Ohio Institute For Fair Contracting, Inc.,                        No.  13AP-776
                                                  :
          Relator,                                              (REGULAR CALENDAR)
                                                  :
v.
                                                  :
Andre T. Porter,
Director of the Ohio                              :
Department of Commerce,
                                                  :
          Respondent.
                                                  :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 29, 2014

---

*D' Angelo & Hughes Co., L.P.A.,* and *Joseph M. D' Angelo,* for relator.

*Michael DeWine*, Attorney General, and *Aaron W. Johnston,* for respondent.

---

IN MANDAMUS
ON RESPONDENT'S MOTION TO DISMISS
ON RELATOR'S MOTION FOR JUDGMENT ON THE PLEADINGS

{¶ 12} In this original action, relator, Ohio Institute For Fair Contracting, Inc. ("OIFC" or "relator"), requests a writ of mandamus ordering respondent, Andre T. Porter, Director of the Ohio Department of Commerce ("director"), to investigate, pursuant to

R.C. 4115.13, the alleged violations of the prevailing wage law as set forth by relator in a parcel of documents mailed to the director's predecessor on or about October 2, 2012.

<u>Findings of Fact</u>:

{¶ 13} 1. According to the complaint, relator is "an industry-sponsored nonprofit corporation that promotes fair competition in public works through monitoring and enforcement of applicable laws, including Ohio Prevailing Wage Law." (Complaint, ¶ 2.)

{¶ 14} 2. According to paragraph three of the complaint:

> The purposes for which OIFC was formed include: (1) monitoring compliance with Ohio prevailing wage law on public improvements; (2) educating workers and contractors on the requirements of Ohio prevailing wage law in order to promote compliance therewith, and (3) aiding and assisting in any investigations of alleged violations of Ohio prevailing wage law. In accordance with these purposes, OIFC has a special interest in ensuring Ohio prevailing wage law is enforced.

{¶ 15} 3. Andre T. Porter is currently the director of the Ohio Department of Commerce. Director Porter's predecessor is David Goodman.

{¶ 16} 4. According to the complaint, the University of Toledo undertook a renovation project called the "University Medical Center Waterproofing Project ('the Project') during the last half of 2012." (Complaint, ¶ 5.)

{¶ 17} 5. According to the complaint, the total overall cost of the project was in excess of $285,000, which exceeds the current threshold for construction under R.C. 4115.03(B)(2).

{¶ 18} 6. According to the complaint, the project is a "public improvement" under R.C. 4115.03(C) and is subject to Ohio prevailing wage law. (Complaint, ¶ 8.)

{¶ 19} 7. According to the complaint, a construction contractor named Edifice Restoration Contractors, Inc. ("Edifice") submitted a bid and was awarded a construction contract for the project.

{¶ 20} 8. According to the complaint, Edifice misclassified its employees performing bricklayer work as lower paid laborers for the work they performed on the project, resulting in underpayments in violation of Ohio prevailing wage law.

{¶ 21} 9. According to the complaint, OIFC monitored the project for prevailing wage compliance and discovered the misclassifications and underpayments by Edifice.

{¶ 22} 10. According to the complaint, on October 2, 2012, relator informed director Goodman of Edifice's prevailing wage violations by means of a parcel of documents along with a cover letter dated October 2, 2012 from Laurie Haupricht, the executive director of OIFC.  Attached to the complaint as exhibit No. 1, the Haupricht letter states:

> The purpose of this letter is to inform you of violations of Ohio's Prevailing Wage law that I uncovered on the University of Toledo Medical College Waterproofing Project ("the Project") in Toledo, Ohio.
>
> Specifically, Edifice Restoration Contractors, Inc. ("ERC") is misclassifying and underpaying its employees on the Project. I have attached ERC's certified payroll reports and certain additional payroll documents that I obtained during my review of this matter. Further, I have attached a letter sent from one of ERC's employees, Mike Pelfrey, to the prevailing wage coordinator on the Project, which details the work performed on the Project and clearly establishes the same to be that of a "Bricklayer." But the ERC classified and paid its employees as Laborer Group 3. I personally met with Mr. Pelfrey and another ERC employee and confirmed both the misclassifications and underpayments. ERC's entire crew is performing bricklayer work, but being classified and paid as laborers. You will see from the attached records that ERC made corrections to Mr. Pelfrey's wages after he made an issue of it, but specifically instructed him not to discuss his wages with other workers. No other employee's wages have been corrected.
>
> I am turning this matter over to your agency for investigation and enforcement. I ask you to let me know the case number and the name and contact information for investigator assigned to the matter. I remain ready and willing to assist in your investigation into this matter in any way that I can.

{¶ 23} 11.  According to the complaint, respondent refused to assign an investigator or take any other action to enforce the alleged violations unless an "interested party" filed a complaint under R.C. 4115.16(A).  In support of the averment, relator attached to its complaint, as exhibit No. 2, an undated letter to Haupricht from Stephen Clegg, bureau chief, wage and hour administration of the Ohio Department of Commerce.  The Clegg letter states:

> While the Bureau of Wage and Hour appreciate the efforts undertaken by your organization to ensure proper compliance with the prevailing wage requirements in Ohio, the Department needs clarification and further documentation before we can assess any potential violations on the on the [sic] University of Toledo Medical College waterproofing project.
>
> It is unclear from your correspondence whether your organization qualifies as an interested third party pursuant to Ohio Revised Code Section 4115.03(F).
>
> * * *
>
> Unfortunately interested party standing is a prerequisite for this Department to open an active investigation into the project. If your organization does qualify under this section, please provide evidence and verification of the interested party standing of your organization.
>
> In addition, there is a requirement set forth in O.R.C. 4115.16(A) that complaints "[s]hall be in writing on a form furnished by the director and shall include sufficient evidence to justify the complaint." If your organization does qualify as an interested party and would like to formally file this complaint, please complete the enclosed form and return it with any and all evidence to justify the complaint.
>
> These additional steps are mandated by the Ohio Revised Code to establish a formal complaint processes [sic] which the Department must follow.

{¶ 24} 12. According to the complaint, by letter dated December 4, 2012, relator's counsel requested reconsideration of the director's decision as contained in the undated Clegg letter. The December 4, 2012 letter from relator's counsel, attached to the complaint as Exhibit No. 3, reads:

> Please be advised that the undersigned serves as legal counsel to the Ohio Institute for Fair Contracting ("OIFC"). On October 2, 2012 my client presented you with correspondence and documentation demonstrating misclassification and underpayment violations committed by an employer named Edifice Restoration Contractors, Inc. ("Edifice") on the University of Toledo Medical College Waterproofing Project ("the Project") in Toledo, Ohio.

The certified payroll reports show that Edifice classified all of its workers as Laborers, Group 3, but the employee statement, which was corroborated by my client by means of direct employee interviews, demonstrates that the crew was performing bricklayer work. One employee raised an issue about his pay rate. His wages were adjusted, but he was also instructed not to discuss the matter with anyone else. No other wage adjustments have been made.

Based on the documentation presented to you, including the names and phone numbers of the two employees my client interviewed to corroborate the information obtained, it is clear Edifice is in violation of R.C. 4115.05, 4115.07, 4115.071(C), and 4115.10. It is also clear that Edifice's entire crew was paid less than the prevailing wage rate for the work they performed on the Project.

But OIFC informs me that you declined to take any action to rectify this situation. You advised my client, "[u]nfortunately interested party standing is a prerequisite for this Department to open an active investigation into the project."

Respectfully, we disagree. Your agency is charged with enforcing Ohio prevailing wage law. This statutory mandate is unequivocal, unqualified, and unconditional. Your duty to enforce the law is absolute. Further, while an investigation may be initiated upon the filing of an employee or interested party complaint, it is incorrect for you to assert that such a complaint is prerequisite to an investigation. The statute specifically empowers commerce to investigate on its own motion, i.e. without the filing of a complaint under R.C. 4115.10 or 4115.16. We believe the statute so provides specifically to address the current situation - to redress violations brought to the agency's attention in the absence of a complaint.

Accordingly, you not only have the legal ability to act upon the violations brought to your attention by OIFC, you have an unqualified, absolute duty to investigate and enforce the law, including seeking redress for Edifice's violations and underpayments.

I ask you to please reconsider your position and to inform me of the case number and investigator you assign to this matter. If I am not provided this information by Friday, December 21, 2012 or informed otherwise by that time, I will

construe your inaction as a refusal to assign a case number and investigator. Appropriate legal action will follow.

{¶ 25} 13. According to the complaint, by letter dated December 14, 2012, Clegg informed relator's counsel:

We received your December 4th letter to Director Goodman and Bureau Chief Clegg. Respectfully, the Ohio Department of Commerce disagrees with your interpretation of the statutory obligations and prohibitions governing this matter.

R.C. 4115.10 describes the "employee" prevailing wage complaint process while R.C. 4115.16 controls the "interested party" prevailing wage complaint process. Pursuant to R.C. 4115.13, a valid prevailing wage complaint requires, among other things, that the complainant to be an "employee" or an "interested party" filing a "properly completed complaint" including "sufficient evidence to justify the complaint." The Director is not required to investigate matters filed absent a valid complaint.

The problem can easily be resolved by identifying a party that satisfies the definition of an "employee" or "interested party" and instruct that party to properly file a complaint, together with sufficient competent evidence to justify the complaint, with Commerce.

{¶ 26} 14. According to the complaint, by letter dated July 24, 2013, relator's counsel repeated relator's request for reconsideration. Attached to the complaint, as exhibit No. 5, the July 24, 2013 letter states:

I am legal counsel for a nonprofit organization known as the Ohio Institute For Fair Contracting (OIFC). The OIFC serves an important role in assisting your agency with prevailing wage enforcement. It is charged with investigating contractors on public improvement projects. Any information suggesting violations of the law that the OIFC uncovers is turned over to the affected parties for further action, including the contracting public authority, interested parties, and the affected employees themselves.

During the Fall of 2012 OIFC uncovered intentional misclassifications and underpayments by a contractor called Edifice Restoration Contractors, Inc. on a University of Toledo project. The information supporting these violations

and a letter explaining the same was forwarded to your predecessor, David Goodman.

Unfortunately, Mr. Goodman's office declined to act on the information my client supplied, stating that an interested party complaint must be completed in order for an investigation to be initiated. I wrote to Mr. Goodman in response and explained our view that the Director's duty to enforce prevailing wage violations is absolute and unqualified, and that the Director may investigate on his own motion in the absence of an employee or interested party complaint. This appeal was likewise rebuffed.

I believe Mr. Goodman erred in refusing to proceed as requested. Should you agree, I ask you to please instruct the appropriate personnel to assign a case number and an investigator to this matter, and to inform me of these actions once they are completed. If I am not provided this information by Wednesday, August 7, 2013, or informed otherwise by that time, I will construe your inaction as a refusal to assign a case number and investigator. Appropriate legal action will follow.

{¶ 27} 15. According to the complaint, by letter dated August 7, 2013, director Porter informed relator's counsel:

Thank you for your letter dated July 24, 2013. I appreciate the information you submitted regarding the Toledo Medical College Waterproofing prevailing wage project. We have reviewed the information you provided and checked to see if any complaints have been filed subsequent to your last letter dated December 4, 2012.

As of the date of this letter, no employee has filed a properly completed prevailing wage complaint pursuant to R.C. 4115.10 nor has an interested party filed a properly completed complaint pursuant to R.C. 4115.16 Additionally, no new information has been submitted to the Department since this project was last reviewed, and I will not initiate an investigation at this time. Accordingly, the Department's position has not changed.

{¶ 28} 16. On September 10, 2013, relator, Ohio Institute For Fair Contracting, Inc., filed this mandamus action.

{¶ 29} 17. On October 9, 2013, alleging "lack of standing and failure to state a claim upon which relief can be granted," respondent moved for dismissal of this action.

{¶ 30} 18. On October 28, 2013, relator moved for judgment on the pleadings. Relator also submitted its brief in opposition to respondent's motion to dismiss.

{¶ 31} 19. On November 14, 2013, respondent filed a "reply" to relator's brief in opposition to the motion to dismiss.  Also, respondent opposed relator's motion for judgment on the pleadings.

{¶ 32} 20. On November 25, 2013, relator filed its reply brief in support of its motion for judgment on the pleadings.

Conclusions of Law:

{¶ 33} It is the magistrate's decision that this court grant respondent's October 9, 2013 motion to dismiss.  It is further the magistrate's decision that this court deny relator's October 28, 2013 motion for judgment on the pleadings.

{¶ 34} R.C. 4115.03 through 4115.21 sets forth what is commonly referred to as Ohio's prevailing wage law.

{¶ 35} R.C. 4115.03 currently provides for several definitions.  Thereunder, R.C. 4115.03(C) provides:

> "Public improvement" includes all buildings, roads, streets, alleys, sewers, ditches, sewage disposal plants, water works, and all other structures or works constructed by a public authority of the state or any political subdivision thereof or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof.

{¶ 36} R.C. 4115.03(F) currently provides:

> "Interested party," with respect to a particular contract for construction of a public improvement, means:
>
> (1) Any person who submits a bid for the purpose of securing the award of the contract;
>
> (2) Any person acting as a subcontractor of a person described in division (F)(1) of this section;
>
> (3) Any bona fide organization of labor which has as members or is authorized to represent employees of a person

described in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees;

(4) Any association having as members any of the persons described in division (F)(1) or (2) of this section.

{¶ 37} R.C. 4115.10(B) currently provides:

Any employee upon any public improvement who is paid less than the prevailing rate of wages applicable thereto may file a complaint in writing with the director upon a form furnished by the director. The complaint shall include documented evidence to demonstrate that the employee was paid less than the prevailing wage in violation of this chapter. Upon receipt of a properly completed written complaint of any employee paid less than the prevailing rate of wages applicable, the director shall take an assignment of a claim in trust for the assigning employee and bring any legal action necessary to collect the claim.

{¶ 38} R.C. 4115.13(A) currently provides:

Upon the director's own motion or within five days of the filing of a properly completed complaint under section 4115.10 or 4115.16 of the Revised Code, the director of commerce, or a representative designated by the director, shall investigate any alleged violation of sections 4115.03 to 4115.16 of the Revised Code.

{¶ 39} R.C. 4115.16(A) currently provides:

An interested party may file a complaint with the director of commerce alleging a specific violation of sections 4115.03 to 4115.16 of the Revised Code by a specific contractor or subcontractor. The complaint shall be in writing on a form furnished by the director and shall include sufficient evidence to justify the complaint. The director, upon receipt of a properly completed complaint, shall investigate pursuant to section 4115.13 of the Revised Code. The director shall not investigate any complaint filed under this section that fails to allege a specific violation or that lacks sufficient evidence to justify the complaint.

## Analysis of the Statute

{¶ 40} Under the prevailing wage statute, i.e., sections 4115.03 to 4115.21 of the Revised Code, an "interested party" as defined by R.C. 4115.03(F) may file a complaint with the director of commerce. Also, an employee as described at R.C. 4115.10(B) may file a complaint with the director of commerce. Under the prevailing wage statute, only an R.C. 4115.03(F) interested party or an R.C. 4115.10(B) may file a complaint with the director of commerce.

{¶ 41} Within five days of the filing of a properly completed complaint, the director of commerce shall investigate. R.C. 4115.13(A). Further, R.C. 4115.13(A) provides that "[u]pon the director's own motion * * * the director of commerce * * * shall investigate any alleged violation" of the prevailing wage statute.

{¶ 42} Relator has not filed a complaint under the prevailing wage statute. However, relator contends that the statute's language "[u]pon the director's own motion * * * the director of commerce * * * shall investigate" required the director to investigate upon his receipt of the parcel of documents on October 2, 2012 from OIFC executive director Haupricht. In so contending, relator holds that the director is without discretion as to the initiation of an investigation when he is asked to do so by anyone who claims a violation of the prevailing wage statute, even when there is no complaint from an interested party or an employee. The magistrate disagrees with relator's holding.

{¶ 43} Relator's interpretation of R.C. 4115.13(A), in effect, deletes the phrase "[u]pon the director's own motion" from the statute. Moreover, the magistrate agrees with respondent, who succinctly argues:

> A plain reading of the text clearly indicates that "shall investigate" is contingent upon the occurrence of either of two distinct and disjunctive prerequisites: the Director either uses his discretion to make a motion **or** an employee/statutory interested party properly files a complaint. Relator goes to some lengths to disconnect the "shall investigate" term from either of the necessary preconditions.

(Emphasis sic.) (Respondent's reply, 8-9.)

{¶ 44} Relator's interpretation of R.C. 4115.13(A) improperly gives anyone alleging a violation ownership over the director's discretionary power to conduct an investigation upon his own motion.  As respondent here correctly observes "[t]he statute gives no other party ownership over the [director's] motion."  (Respondent's reply, 10.)

{¶ 45} In determining legislative intent, this court must first look to the plain language of R.C. 4115.13(A).  *See State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997).  If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.  *Id.*  Unambiguous statutes are to be applied according to the plain meaning of the words used.  *Id.*  Courts are not free to delete or insert other words.  *Id.*

{¶ 46} Clearly, R.C. 4115.13(A) is unambiguous and definite as to the director's power to launch an investigation upon his own motion.  This court cannot accept relator's invitation to delete words from the statute or to rewrite the statute to meet relator's expectations.  The statutory command that the director "shall investigate" applies only when the director so moves or within five days of the filing of a properly completed complaint.

{¶ 47} In short, R.C. 4115.13(A) does not compel the director to investigate the October 2, 2012 allegations of OIFC nor does it compel this court to order the director to do so.

## Standing

{¶ 48} In his memorandum in support of his motion to dismiss, respondent argues that relator does not have standing to bring this mandamus action.

{¶ 49} In *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451 (1999), the Supreme Court of Ohio had occasion to discuss standing:

> It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue. *Ohio Contractors Assn. v. Bicking* (1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088, 1089. The concept of standing embodies general concerns about how courts should function in a democratic system of government.
>
> * * *

[I]n the vast majority of cases brought by a private litigant," 'the question of standing depends upon whether the party has alleged such a personal stake in the outcome of the controversy, as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' " (Citations and internal quotations omitted.) *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178-179, 64 O.O.2d 103, 105, 298 N.E.2d 515, 516, quoting *Sierra Club v. Morton* (1972), 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 641. In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury.

* * *

This court has long taken the position that when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties.

* * *

We hold, therefore, that where the object of an action in mandamus and/or prohibition is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result, it being sufficient that relator is an Ohio citizen and, as such, interested in the execution of the laws of this state.

*Id.* 469-75.

{¶ 50} Citing *Ohio Academy,* respondent argues:

OIFC cannot demonstrate a direct or concrete injury it has suffered that is different from any injury suffered by the general public. Further, the OIFC cannot demonstrate any beneficial interest in the requested relief, an investigation by Commerce, which would remedy any harm done to the OIFC. Without such an interest the OIFC's writ must be denied.

* * *

> In this case the OIFC's only interest in this case is in having its interpretation of the law upheld, and as a result, it lacks standing to proceed. After all, if the OIFC had a concrete beneficial interest in the outcome of Commerce's conducting an investigation, it would have qualified as an interested party pursuant to R.C. Chapter 4115, and had the right to demand an investigation following the completion of a properly completed complaint.

(Respondent's motion to dismiss, 8-10.)

{¶ 51} In its brief in opposition to respondent's motion to dismiss, relator responds to respondent's standing argument. After setting forth the well-settled three prong requirement for the issuance of a writ of mandamus, relator responds to respondent's standing argument:

> Respondent attacks OIFC's standing as a basis to undermine the first and third prongs of the test. But it goes too far, essentially immunizing R.C. Chapter 4115 from mandamus claims altogether by insisting to have standing, a relator must be a statutorily defined "interested party." But if that were true, the interested party/relator would also always have an adequate remedy at law by proceeding under R.C. 4115.16. Instead, "[a] person must be beneficially interested in the case in order to bring a mandamus action." "A person's status as a taxpayer is generally sufficient to establish a beneficial interest when the object is to compel performance of a duty for the benefit of the public." And residents are normally considered taxpayers.
>
> Thus, alleging residency was sufficient to establish a beneficial interest to seek mandamus against a planning commission, without the need to show any direct injury to the claimant.
>
> Here, in addition to being a corporate resident of this State, the OIFC was expressly organized to monitor, investigate and compel compliance with Ohio prevailing wage law. These are literally the exclusive purposes for which OIFC was formed. It dedicates all of its time and resources to ensuring compliance with the law. In this case, those resources were expended uncovering clear, blatant, and intentional violations of the law by Edifice, including underpaying an entire crew of workers on the Project. Without question, OIFC has a beneficial interest in seeing that its investigative

> efforts bring about the very result for which it was created - enforcement of the prevailing wage law. The relief OIFC seeks directly advances its exclusive purpose, as set forth in its articles of incorporation. Accordingly, OIFC is entitled to the relief sought.

(Footnotes omitted.) (Relator's brief in opposition, 7-9.)

{¶ 52} Even if it can be said that relator has persuasively argued that it does not lack standing to bring this action, relator cannot show a clear legal right to the relief it requests in this action and, concomitantly, relator cannot show that respondent has a clear legal duty to initiate an investigation into the allegations that relator submitted to respondent on or about October 2, 2012. That is to say, even if relator does have a "beneficial interest in seeing that its investigative efforts bring about the very result for which it was created-enforcement of the prevailing wage law," it cannot show a clear legal right to have the director investigate its allegations, and it cannot show that the director has a clear legal duty to investigate relator's allegations. (Relator's brief in opposition, 8.)

{¶ 53} In short, contrary to what relator suggests here, standing alone cannot compel a writ of mandamus.

{¶ 54} It may be worth noting that, in at least one case, the Supreme Court of Ohio seems to suggest that R.C. 4115.03(F)(3) interested party status bestows standing. *Sheet Metal Workers' Internatl. Assoc., Local Union No. 33 v. Mohawk Mechanical, Inc.,* 86 Ohio St.3d 611, 613 (1999). But, OIFC concededly is not an interested party and thus cannot claim the type of "standing" that the court discussed in *Mohawk.* Here, relator incorrectly suggests that, if it can show it has the standing discussed in *Ohio Academy*, it necessarily acquires the statutory rights conferred upon an interested party under R.C. 4115.03 et seq.

{¶ 55} Clearly, relator cannot use *Ohio Academy* standing to create a legal right that is not granted by the statute. Moreover, as respondent correctly points out, it is axiomatic that, in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government and courts are not authorized to create the legal duty enforceable in mandamus. *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 18.

{¶ 56} Accordingly, for all the above reasons, it the magistrate's decision that this court grant respondent's motion to dismiss.  It is further the magistrate's decision that this court deny relator's motion for judgment on the pleadings.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).